# IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

## HANGXIAO CHE, et al.,

## ZINGUANG YAO, et al.,
*Consolidated Plaintiffs-Appellants,*

v.

## DAIMLER TRUCK NORTH AMERICA LLC, et al.,
*Consolidated Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA
HONORABLE CRISTAL C. BRISCO
DISTRICT COURT NOS. 3:21-CV-00554 & 3:21-CV-00784

## CONSOLIDATED APPELLEES DAIMLER TRUCK NORTH AMERICA LLC & DAIMLER TRUCKS & BUSES US HOLDING LLC'S JOINT BRIEF

Michael J. Kleffner
Taylor B. Markway
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mkleffner@shb.com
tmarkway@shb.com

Carolyn E. Riggs
FBT GIBBONS LLP
111 Monument Circle, Suite 4500
P.O. Box 44961
Indianapolis, IN 46244-0961
Telephone: (317) 237-3800
Facsimile: (317) 237-3900
criggs@fbtgibbons.com

Counsel for Consolidated Appellees
Daimler Truck North America LLC and
Daimler Trucks & Buses US Holding LLC

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>26-1795 (consolidated with 26-1796)</u>

Short Caption: <u>Hangxiao Che, et al. v. Daimler Truck North America LLC, et al.</u>

　　To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

　　The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

　　☑　　**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Daimler Truck North America LLC ("DTNA") and Daimler Trucks & Buses US Holding LLC ("DTB")</u>

(2)　　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Shook, Hardy & Bacon LLP; Ice Miller LLP; FBT Gibbons LLP</u>

(3)　　If the party, amicus or intervenor is a corporation:

　　i)　　Identify all its parent corporations, if any; and

　　　　<u>DTNA's sole member is DTB. DTB's sole member is Daimler Truck Holding AG. This is revised information.</u>

　　ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

　　　　<u>DTNA and DTB have no stock. Therefore, no publicly held company owns 10% or more of their stock.</u>

(4)　　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)　　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

---

Attorney's Signature: <u>/s/ Carolyn E. Riggs</u>　　Date: <u>July 20, 2026</u>

Attorney's Printed Name:  <u>Carolyn E. Riggs</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　**Yes** ☑　**No** ☐

Address: <u>111 Monument Circle, Suite 4500</u>

<u>Indianapolis, Indiana 46204</u>

Phone Number: <u>(317) 237-3800</u>　　Fax Number:  <u>(317) 237-3900</u>

E-Mail Address: <u>criggs@fbtgibbons.com</u>

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>26-1795 (consolidated with 26-1796)</u>

Short Caption: <u>Hangxiao Che, et al. v. Daimler Truck North America LLC, et al.</u>

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Daimler Truck North America LLC ("DTNA") and Daimler Trucks & Buses US Holding LLC ("DTB")</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Shook, Hardy & Bacon LLP; Ice Miller LLP; FBT Gibbons LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and

        <u>DTNA's sole member is DTB. DTB's sole member is Daimler Truck Holding AG. This is revised information.</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>DTNA and DTB have no stock. Therefore, no publicly held company owns 10% or more of their stock.</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
<u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
<u>N/A</u>

Attorney's Signature: <u>/s/ Michael J. Kleffner</u>    Date: <u>July 20, 2026</u>

Attorney's Printed Name: <u>Michael J. Kleffner</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address: <u>2555 Grand Boulevard</u>

<u>Kansas City, Missouri 64108</u>

Phone Number: <u>(816) 559-4077</u>    Fax Number: <u>(816) 421-5547</u>

E-Mail Address: <u>mkleffner@shb.com</u>

Save As    Clear Form

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>26-1795 (consolidated with 26-1796)</u>

Short Caption: <u>Hangxiao Che, et al. v. Daimler Truck North America LLC, et al.</u>

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   ☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 <u>Daimler Truck North America LLC ("DTNA") and Daimler Trucks & Buses US Holding LLC ("DTB")</u>

 _____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 <u>Shook, Hardy & Bacon LLP; Ice Miller LLP; FBT Gibbons LLP</u>

 _____

(3)    If the party, amicus or intervenor is a corporation:

   i)    Identify all its parent corporations, if any; and

     <u>DTNA's sole member is DTB. DTB's sole member is Daimler Truck Holding AG. This is revised information.</u>

   ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

     <u>DTNA and DTB have no stock. Therefore, no publicly held company owns 10% or more of their stock.</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 <u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 <u>N/A</u>

Attorney's Signature: <u>/s/ Taylor B. Markway</u>    Date: <u>July 20, 2026</u>

Attorney's Printed Name:  <u>Taylor B. Markway</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address:  <u>2555 Grand Boulevard</u>

   <u>Kansas City, Missouri 64108</u>

Phone Number: <u>(816) 559-4077</u>    Fax Number:  <u>(816) 421-5547</u>

E-Mail Address: <u>tmarkway@shb.com</u>

**TABLE OF CONTENTS**

                                                                                                      **Page**

JURISDICTIONAL STATEMENT ........................................................................... 1

STATEMENT OF THE ISSUES ............................................................................... 2

STATEMENT OF THE CASE .................................................................................. 3

     I.       Plaintiffs' Claims ................................................................................ 3

     II.     SVO's Decision ................................................................................. 4

     III.    DTNA and DTB's Motion for Judgment on the Pleadings ..................... 8

     IV.    DTNA and DTB's Motion for Summary Judgment ............................. 10

SUMMARY OF THE ARGUMENT ........................................................................ 12

STANDARD OF REVIEW ..................................................................................... 13

ARGUMENT ........................................................................................................ 14

     I.       Plaintiffs' Pleaded Invoice Excerpt was Sufficient to Establish the Offer and Rejection Elements of the No-Duty Defense. ....................... 15

     II.     Plaintiffs' Admission to DTNA and DTB's Fact #59 was Sufficient to Establish the Offer and Rejection Elements of the No-Duty Defense ...................................................................................... 20

     III.    DTNA and DTB's One-Sided Evidence Was Sufficient to Establish the Offer and Rejection Elements of the No-Duty Defense. ................. 22

     IV.    Plaintiffs Waived Any Challenge to the Judgment in Favor of DTB... 27

CONCLUSION ..................................................................................................... 28

**Page(s)**

**Cases**

*Anderson v. P.A. Radocy & Sons, Inc.,*
865 F. Supp. 522 (N.D. Ind. 1994)......................................................................... 22

*Appvion, Inc. Ret. Savs. & Emp. Stock Ownership Plan by & through
Lyon v. Buth,*
99 F.4th 928 (7th Cir. 2024) .................................................................................. 27

*Atkinson v. P & G-Clairol, Inc.,*
813 F. Supp. 2d 1021 (N.D. Ind. 2011)................................................................... 14

*Branham v. Snow,*
392 F.3d 896 (7th Cir. 2004).................................................................................. 22

*Brewer v. PACCAR, Inc.,*
124 N.E.3d 616 (Ind. 2019)............................................................................*passim*

*Bridewell v. Eberle,*
730 F.3d 672 (7th Cir. 2013).............................................................................. 17, 18

*Campos v. Crown Equip. Corp.,*
35 Fed. App'x 31 (2d Cir. 2002) ............................................................................ 24

*Corrugated Paper Prods., Inc. v. Longview Fibre Co.,*
868 F.2d 908 (7th Cir. 1989).............................................................................. 13, 26

*Curtis v. Costco Wholesale Corp.,*
807 F.3d 215 (7th Cir. 2015).................................................................................. 21

*Domka v. Portage Cty., Wis.,*
523 F.3d 776 (7th Cir. 2008).................................................................................. 23

*Dueringer v. Gen. Am. Life Ins. Co.,*
853 F.2d 283 (5th Cir. 1988).................................................................................. 18

*Grant v. Trs. of Ind. Univ.,*
870 F.3d 562 (7th Cir. 2017).............................................................................. 20, 23

*Grinnell Mut. Reins. Co. v. S.B.C. Flood Waste Sols., Inc.,*
113 F.4th 768 (7th Cir. 2024) ............................................ 19

*Hammel v. Eau Galle Cheese Factory,*
407 F.3d 852 (7th Cir. 2005) ........................................ 13, 26

*Hedgepeth v. Britton,*
152 F.4th 789 (7th Cir. 2025) ...................................... 19, 22

*Houben v. Telular Corp.,*
309 F.3d 1028 (7th Cir. 2002) ........................................... 17

*Hutchison v. Fitzgerald Equip. Co.,*
910 F.3d 1016 (7th Cir. 2018) ............................................ 24

*In re Greenpoint Tactical Income Fund LLC,*
168 F.4th 1002 (7th Cir. 2026) ......................................... 13

*Lewis v. Ind. Dep't of Transp.,*
173 F.4th 876 (7th Cir. 2026) .......................................... 13

*Maria S. as Next Friend for E.H.F. v. Garza,*
912 F.3d 778 (5th Cir. 2019) ........................................... 19

*Medcom Holding Co. v. Baxter Travenol Labs., Inc.,*
106 F.3d 1388 (7th Cir. 1997) ...................................... 17, 18

*Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc.,*
59 F. Supp. 3d 865 (N.D. Ill. 2014) ................................. 26

*Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.,*
108 F.4th 458 (7th Cir. 2024) ......................................... 27

*Pam v. City of Evansville,*
154 F.4th 523 (7th Cir. 2025) ......................................... 13

*Pisciotta v. Old Nat'l Bancorp,*
499 F.3d 629 (7th Cir. 2007) .......................................... 19

*Siegel v. Shell Oil Co.,*
612 F.3d 932 (7th Cir. 2010) ...................................... 13, 27

*Skelton v. Radisson Hotel Bloomington,*
33 F.4th 968 (8th Cir. 2022) ........................................... 13

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.,*
845 F.3d 384 (8th Cir. 2016) ....................................... 19, 20

*Wackman v. Rubsamen,*
602 F.3d 391 (5th Cir. 2010)................................................................ 17, 18

*Wells v. Freeman Co.,*
94 F.4th 608 (7th Cir. 2024) ............................................................... 18, 19

**Rules**

Federal Rule of Civil Procedure 56(c)(1)(A) ........................................ 20, 21

N.D. Ind. Rule 56-1(b)(2)(C) .................................................................. 21

**JURISDICTIONAL STATEMENT**

Consolidated Defendants-Appellees Daimler Truck North America LLC ("DTNA") and Daimler Trucks & Buses US Holding LLC ("DTB") agree with the Jurisdictional Statement of Consolidated Plaintiffs-Appellants ("Plaintiffs") to the extent it states the amount in controversy exceeded $75,000, exclusive of interest and costs, and Plaintiffs are not from the same state as any of the Defendants. However, Plaintiffs' Jurisdictional Statement is not complete and correct with respect to DTNA and DTB. DTNA is a Delaware limited liability company with its principal place of business in Oregon. DTNA's sole member is DTB. DTB is a Delaware limited liability company with its principal place of business in Oregon. DTB's sole member is Daimler Truck Holding AG, a German corporation with its principal place of business in Germany.

DTNA and DTB agree with Plaintiffs' Jurisdictional Statement regarding this Court's appellate jurisdiction, and state that it is complete and correct.

## STATEMENT OF THE ISSUES

1.  Was Plaintiffs' pleaded invoice excerpt sufficient to establish the offer and rejection elements of Indiana's no-duty defense for component-part manufacturers?

2.  Was Plaintiffs' admission to DTNA and DTB's fact #59 sufficient to establish the offer and rejection elements of the no-duty defense?

3.  Was DTNA and DTB's one-sided evidence sufficient to establish the offer and rejection elements of the no-duty defense?

4.  Did Plaintiffs waive any challenge to the judgment in favor of DTB?

## STATEMENT OF THE CASE

### I. Plaintiffs' Claims

The underlying lawsuits[1] arise out of a 2019 tour bus accident in which

Plaintiffs were allegedly injured while passengers on the bus. *Che* Dkt. 206, ¶ 1.[2]

The tour bus incorporated a Freightliner M2 106 chassis and cab ("the Subject

Chassis") manufactured by DTNA and sold to a DTNA authorized dealership, Truck

Centers, Inc. ("Truck Centers"). *Id.* at ¶¶ 2, 3, 7. Truck Centers ordered the Subject

Chassis for its customer, SVO Group, Inc. ("SVO"). *Id.* at ¶ 8.

As pleaded and pictured in Plaintiffs' operative Complaints, the Subject

Chassis, by itself, was an "incomplete vehicle" incapable of being used as a tour bus:



---

[1] Plaintiffs appeal from summary judgment rulings in two lawsuits. The first lawsuit, referred herein as "*Che*," was brought by 20 Plaintiffs against DTNA and DTB. *See* Dkt. 135, p. 2 in *Hangxiao Che, et al. v. Daimler Trucks N. Am., LLC, et al.*, Case No. 3:21-cv-554 (N.D. Ind.). The second lawsuit, referred herein as "*Yao*," was brought by 8 Plaintiffs against DTNA (DTB was not a named Defendant). *See* Dkt. 150, p. 2-3 in *Zhiguang Yao, et al. v. Daimler Trucks N. Am., LLC, et al.*, Case No. 3:21-cv-784 (N.D. Ind.).

[2] *See also Yao* Dkt. 209. For ease of reference, DTNA and DTB primarily cite to the *Che* docket numbers, but also note the *Yao* counterparts.

*Id.* at ¶ 4. SVO, however, turned the Subject Chassis into a completed bus by customizing and mounting a bus body on the frame rails of the Subject Chassis and then integrating the bus body with the cab section to build a complete vehicle like the one shown below:



*Id.* at ¶¶ 10-11.

Plaintiffs asserted claims for strict product liability, negligence, breach of implied warranty, and wrongful death. *Id.* at ¶ 12. Plaintiffs alleged DTNA and DTB are liable for failing to equip the Subject Chassis with electronic stability control ("ESC"), a safety feature referred to by DTNA as "Vehicle Stability Advisor and Control." *Id.* at ¶¶ 13, 15; *see also Che* Dkt. 189-14, ¶ 9.[3]

## II.  SVO's Decision

Though Plaintiffs blamed DTNA and DTB, it was undisputed that SVO, the manufacturer of the tour bus, had the final decision-making as to whether the

---

[3] *See also Yao* Dkt. 189-14.

Subject Chassis would be equipped with ESC. *Che* Dkt. 206, ¶ 33. "[A]t the end of the day, what's going to go on that chassis" was a "hundred percent" "SVO's decision." *Id.* at ¶ 25. The "only way that [ESC] is going to get on an SVO vehicle or not is by SVO making that decision." *Che* Dkt. 208-1, p. 135:8-12.[4]

David Klockow was the Sales Executive at Truck Centers, the business that sold the Subject Chassis to SVO. *Che* Dkt. 206, ¶ 39. Mr. Klockow, who has been employed by Truck Centers and its predecessor companies for more than 40 years, developed a longstanding business relationship with Alex Foris, the former (now deceased)[5] owner of SVO and its predecessor companies. *Id.* at ¶¶ 40-41. Mr. Klockow had hundreds of meetings with Mr. Foris to discuss SVO's orders. *Id.* at ¶¶ 45-46. Mr. Foris, on behalf of SVO (and its predecessors), purchased hundreds of incomplete truck chassis from Truck Centers (and its predecessors), most of which were on the same Freightliner M2 platform at issue here. *Id.* at ¶ 42; *Che* Dkt. 208-1, p. 55:5-22. SVO had a "standard" specification for chassis, and SVO decided which equipment to include in its standard specification. *Che* Dkt. 206, ¶¶ 20, 21.

DTNA first offered ESC as an available safety feature for the Freightliner M2 106 truck chassis in 2010. *Id.* at ¶ 28. As an authorized DTNA dealership, Truck Centers was informed ESC was an available feature for the Freightliner M2 106 truck chassis "through multiple mediums, including but not limited to SpecPro

---

[4] *See also Yao* Dkt. 211-1.
[5] Mr. Foris died in 2019, before Plaintiffs filed their lawsuits. *Che* Dkt. 208-1, p. 107:11-16.

which is DTNA's electronic specification and ordering platform used by authorized dealers to submit orders to DTNA." *Che* Dkt. 189-5, ¶ 7.[6]

Mr. Klockow advised Mr. Foris in 2010 that ESC was available for the Freightliner M2 106 truck chassis; Mr. Klockow also gave Mr. Foris a "general description" of the feature based on information provided by DTNA. *Che* Dkt. 208-1, p. 110:7-17, 125:16-126:5; *Che* Dkt. 189-14, ¶ 10. Mr. Foris decided that, with respect to the "medium duty" chassis ordered by SVO, such as the Subject Chassis, ESC was not "needed for what those vehicles were going to be." *Che* Dkt. 208-1, p. 111:22-112:21, 132:20-133:3. Thus, ESC was not added to SVO's standard specification—though SVO did order ***some*** DTNA chassis with ESC. *Che* Dkt. 206, ¶¶ 23, 30.

Otherwise, Mr. Foris "normally" ordered groups of chassis in accordance with SVO's standard specification. *Che* Dkt. 208-1, p. 70:1-8. Mr. Klockow reviewed SVO's standard specification annually with Mr. Foris "line by line to make sure [they are] still all on the same page with what [Mr. Foris is] ordering." *Id.* at p. 88:22-89:5; *see also id.* at 131:9-19. Mr. Klockow discussed the availability of ESC and its features with Mr. Foris "probably at least once a year when [they] were reviewing the [standard specification] for any changes that would have happened year over year." *Id.* at 136:23-137:12.

On June 29, 2016, Mr. Klockow prepared a proposal for SVO of a group of truck chassis that included the Subject Chassis. *Che* Dkt. 206, ¶ 58. Mr. Klockow

---

[6] *See also Yao* Dkt. 189-5.

prepared the proposal in accordance with SVO's standard specification. *Id.* at ¶ 32; *Che* Dkt. 208-1, p. 72:23-73:12. Mr. Klockow went over the proposal line-by-line, and in-person, with Mr. Foris. *Che* Dkt. 189-14, ¶ 13. Mr. Foris signed and initialed the proposal. *Che* Dkt. 206, ¶ 60. ***The proposal did not include ESC because Mr. Foris did not want it***. *Id.* at ¶ 59; *Che* Dkt. 189-14, ¶ 13.

After going over the proposal with Mr. Foris, Mr. Klockow prepared a document commonly called "the Dealer Handshake." *Che* Dkt. 189-14, ¶ 15. Mr. Klockow used the Dealer Handshake to confirm that the chassis ordered from DTNA conformed to the specifications the customer requested. *Id.* The Dealer Handshake for the Subject Chassis contains a tick mark next to the phrase, "NO VEHICLE STABILITY ADVISOR OR CONTROL." *Id.*; *Che* Dkt. 189-17, p. 14.[7] Mr. Klockow placed the tick mark there because Mr. Foris declined ESC for the Subject Chassis. *Che* Dkt. 189-14, ¶ 15; *Che* Dkt. 208-1, p. 126:21-127:10.

Likewise, the invoice between DTNA and SVO explicitly states the Subject Chassis was not equipped with vehicle stability advisor or control (*i.e.*, ESC). *Che* Dkt. 206, ¶ 36. Plaintiffs' operative Complaints even include an excerpt of the invoice showing as much:

```
456  736-998  NO OBSTACLE DETECTION SYSTEM              ■
457  73H-998  NO CAMERA/VIDEO/IMAGING SYSTEM            ■
458  49B-998  NO VEHICLE STABILITY ADVISOR OR CONTROL  ■
459  73B-998  NO LANE DEPARTURE WARNING SYSTEM         ■
```

*Id.* at ¶ 14; *Che* Dkt. 135, ¶ 64; *Yao* Dkt. 150, ¶ 53.

---

[7] *See also Yao* Dkt. 189-17.

### III. DTNA and DTB's Motion for Judgment on the Pleadings

In October 2023, DTNA and DTB moved for judgment on the pleadings, asserting Plaintiffs' own allegations established, as a matter of controlling Indiana law, that DTNA and DTB owed no duty to equip the Subject Chassis with ESC. *Che* Dkt. 146, p. 1; *Che* Dkt. 147, p. 5-7.[8] DTNA and DTB explained that, under Indiana law, a defendant owes no duty in the product-liability context if three elements are met: (1) the defendant's product is a component part; (2) the defendant offers the subject safety feature; and (3) the final manufacturer rejects the safety feature. *Che* Dkt. 147, p. 6. DTNA further explained that all three elements were satisfied based on Plaintiffs' own pleading. *Id.* at p. 6-7.

For the first element, DTNA and DTB noted the Subject Chassis was clearly a component part, as Plaintiffs' allegations identified the Subject Chassis as an "incomplete vehicle" that SVO combined with a bus body to create the "complete vehicle" of a tour bus. *Id.* at p. 6. For the second and third elements, DTNA and DTB noted Plaintiffs specifically alleged DTNA offered ESC for the Subject Chassis, but SVO, the final manufacturer of the tour bus, declined it. *Id.* at p. 7. DTNA and DTB highlighted the fact that Plaintiffs' operative Complaints even provide the invoice excerpt showing as much:

| 456 | 736-998 | NO OBSTACLE DETECTION SYSTEM | ▮ |
| 457 | 73H-998 | NO CAMERA/VIDEO/IMAGING SYSTEM | ▮ |
| 458 | 49B-998 | NO VEHICLE STABILITY ADVISOR OR CONTROL | ▮ |
| 459 | 73B-998 | NO LANE DEPARTURE WARNING SYSTEM | ▮ |

---

[8] *See also Yao* Dkt. 158; *Yao* Dkt. 159.

*Id.* DTNA and DTB further pointed out this pleaded invoice excerpt was the exact type of evidence the Indiana Supreme Court identified as sufficient to prove a safety feature was offered and rejected. *Id.*

The District Court nevertheless denied DTNA and DTB's Motion for Judgment on the Pleadings, reasoning:

> The Court sees this as an extremely close call. But at this early stage in the litigation, it sides with Plaintiffs. Consider the evidence that was found to defeat summary judgment in *Brewer*. There, the end-manufacturer answered requests for admissions denying "that it was provided with a list of options from which to identify or select the options that it desired." That the Indiana Supreme Court found this denial enough to defeat the component manufacturer defense tells the Court that "offer" and "reject" are active verbs. That is, it requires more than optional safety features that are not ordered. Instead, to prove the defense, the component manufacturer must show that it made an active offer to install the safety features and the end manufacturer actively declined.
>
> Examples might help. Say, for instance, SVO called Klockow and said it wanted a base model Freightliner M2 106 chassis and cab. No other discussions are held regarding options, safety or otherwise. Under these facts, *Brewer* may not apply. But, on the other hand, say that SVO went down a checklist of available options, selecting and rejecting each as it saw fit. Or, similarly, that Klockow verbally reviewed all available options with SVO. These facts may support the application of the *Brewer* exception.
>
> Plaintiffs' complaint alleges neither scenario. Instead, it simply alleges that optional features were not sold with the Chassis. The Court does not believe that is enough for Plaintiffs to have pleaded themselves out of court.

*Che* Dkt. 154, p. 9 (citations omitted).[9]

---

[9] *See also Yao* Dkt. 173.

**IV.    DTNA and DTB's Motion for Summary Judgment**

In June 2025, DTNA and DTB moved for summary judgment on Plaintiffs' claims, raising the same no-duty defense previously briefed in their Motion for Judgment on the Pleadings. *Che* Dkt. 188, p. 1; *Che* Dkt. 189, p. 1.[10] DTNA and DTB renewed their argument that Plaintiffs' pleaded allegations, including the invoice excerpt, were sufficient to establish SVO rejected an offer of ESC for the Subject Chassis. *Che* Dkt. 189, p. 6-7. DTNA and DTB also supported the offer and rejection elements with evidence outside the pleadings, including, *inter alia*, testimonial and documentary evidence from Mr. Klockow. *Id.* at p. 7-11.

Separate and apart from the no-duty defense, DTNA and DTB pointed out there was no evidence to hold DTB liable even if a duty were owed. *Id.* at p. 12-13. Plaintiffs, after all, did not specifically attribute any conduct to DTB, who was not a manufacturer or seller of the Subject Chassis. *Id.*

In March 2026, the District Court granted DTNA and DTB's Motion for Summary Judgment. *Che* Dkt. 218, p. 15.[11] For the first element of the no-duty defense, the District Court agreed with DTNA and DTB that the Subject Chassis was a component part (a matter Plaintiffs did not dispute). *Id.* at p. 8.

For the second element, the District Court discussed the evidence establishing ESC was offered to SVO, including that Mr. Klockow discussed ESC with Mr. Foris and that Mr. Klockow placed the tick mark on the Dealer's Handshake next to the phrase "NO VEHICLE STABILITY ADVISOR OR

---

[10] *See also Yao* Dkt. 188; *Yao* Dkt. 189.
[11] *See also Yao* Dkt. 220.

10

CONTROL" to indicate Mr. Foris (on behalf of SVO) "declined ESC for the Subject Chassis." *Id.* at p. 9. The District Court further observed, "***Plaintiffs do not offer any evidence to contradict***" the evidence showing ESC was offered to SVO. *Id.* at p. 10 (emphasis added). The District Court thus concluded, "[i]n the absence of any contradictory evidence, the Court finds that [DTNA and DTB] have established as a matter of law that ESC was offered to the final manufacturer." *Id.* at p. 11.

For the third and final element, the District Court discussed the evidence establishing SVO rejected the offer of ESC, including that Mr. Foris knew ESC was available, that Mr. Foris believed ESC was unnecessary for medium-duty chassis like the Subject Chassis, and that SVO had ordered some chassis with ESC, but not the Subject Chassis. *Id.* at p. 11-13. The District Court found that DTNA and DTB "established as a matter of law that SVO, the final manufacturer, rejected the inclusion of ESC on the Subject Chassis." *Id.* at p. 13.

> The District Court summarized its ruling on the no-duty defense as follows:
>
> At the pleadings stage, the Court found [DTNA and DTB's] assertion of the component-part manufacturer defense to be "an extremely close call." It is no longer. Based on undisputed facts and uncontroverted evidence, [DTNA and DTB] have shown that DTNA was a component-part manufacturer, that it offered ESC to SVO, and that SVO rejected that offer. Thus, DTNA had no duty to include ESC and [DTNA and DTB] are entitled to judgment as a matter of law.

*Id.* (citation omitted). The District Court also ruled DTB was entitled to summary judgment on the independent ground that Plaintiffs "made no showing that DTB was involved in any aspect of the production and sale of the Subject Chassis." *Id.* at p. 14.

## SUMMARY OF THE ARGUMENT

Plaintiffs insist DTNA and DTB did not meet their evidentiary burden on the offer and rejection elements of Indiana's no-duty defense for component-part manufacturers. This argument fails for several different reasons. For one, Plaintiffs, themselves, provided the ***exact type of evidence*** the Indiana Supreme Court has said is sufficient to conclusively prove the offer and rejection elements. That evidence, the invoice excerpt pleaded by Plaintiffs, is dispositive under Indiana law.

Even if that evidence were wrongly ignored, however, Plaintiffs admitted—via their failure to properly dispute—DTNA and DTB's summary judgment fact #59, which states: "***The proposal [for the Subject Chassis] did not include ESC because Mr. Foris did not want it***." *Che* Dkt. 206, ¶ 59 (emphasis added). That admitted fact is also dispositive, as it conclusively establishes SVO made a deliberate choice to reject ESC that was offered for the Subject Chassis.

Lastly, if Plaintiffs' own dispositive pleading and admission were not enough, DTNA and DTB also offered a mountain of evidence in the District Court establishing SVO knowingly rejected the available ESC for the Subject Chassis. Plaintiffs, in turn, offered no contradictory evidence, *i.e.*, nothing whatsoever suggesting the absence of ESC on the Subject Chassis resulted from SVO's unwitting choice. Now, Plaintiffs fault the District Court for not letting a jury hear their speculative version of events. The District Court, though, did not impermissibly choose between competing inferences, as Plaintiffs argue. There was no ***reasonable*** inference to make in Plaintiffs' favor. The District Court correctly granted summary judgment based on DTNA and DTB's one-sided evidence.

12

**STANDARD OF REVIEW**

This Court reviews "a grant of summary judgment de novo, construing the evidence and drawing all ***reasonable*** inferences in the nonmoving party's favor." *Lewis v. Ind. Dep't of Transp.*, 173 F.4th 876, 882 (7th Cir. 2026) (emphasis added). "But an inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage." *Id.* (quotations omitted). "Nor is a conceivable inference necessarily reasonable." *Id.* (quotations omitted). This Court "will not draw inferences that are supported by only speculation or conjecture." *In re Greenpoint Tactical Income Fund LLC*, 168 F.4th 1002, 1008 (7th Cir. 2026) (quotations & brackets omitted). "There must be some factual foundation for [this Court] to draw favorable reasonable inferences" for the nonmoving party. *Pam v. City of Evansville*, 154 F.4th 523, 528 (7th Cir. 2025).

"Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). The nonmoving party "cannot establish a genuine issue of material fact simply by demanding more evidence." *Skelton v. Radisson Hotel Bloomington*, 33 F.4th 968, 977 (8th Cir. 2022). Nor can the nonmoving party rely on the possibility a jury might disbelieve the moving party's uncontradicted evidence. *Corrugated Paper Prods., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir. 1989).

13

## ARGUMENT

Plaintiffs do not dispute the District Court's ruling that Indiana law applies to their claims against DTNA and DTB. *Che* Dkt. 218, p. 5-6. Under Indiana law, Plaintiffs' claims of strict product liability, negligence, breach of implied warranty and wrongful death are all tort-based claims that merge into a single product liability claim governed by the Indiana Product Liability Act ("IPLA"). *Atkinson v. P & G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1023-24, 1027 (N.D. Ind. 2011). Because Plaintiffs' claims are all based on the absence of a safety feature (ESC), the merged claim under the IPLA is treated as a design-defect claim. *Brewer v. PACCAR, Inc.*, 124 N.E.3d 616, 621 (Ind. 2019). A negligence standard governs such a claim. *Id.* That means Plaintiffs had the burden to show: (1) DTNA owed a duty to Plaintiffs; (2) DTNA breached that duty; and (3) DTNA's breach proximately caused Plaintiffs' alleged injuries. *Id.* At issue here is the duty element.

In *Brewer*, the Indiana Supreme Court held "under the IPLA, a component-part manufacturer has no duty to include optional safety features that were offered to, and rejected by, the final manufacturer." *Id.* at 625. "When safety features are offered, the final manufacturer is in the best position to decide which features are necessary—and which are not—for the environment in which the integrated product will be used." *Id.* There are three elements a defendant must show to establish *Brewer*'s no-duty defense: (1) the defendant's product is a component part; (2) the defendant offers the safety feature; and (3) the final manufacturer rejects the safety feature. *Id.*

Plaintiffs do not dispute the District Court's ruling that DTNA and DTB established the first element, *i.e.*, the Subject Chassis was a component part of the tour bus. Plaintiffs argue only that DTNA and DTB did not meet their evidentiary burden on the second and third elements, and the District Court impermissibly drew inferences in DTNA and DTB's favor, rather than Plaintiffs' favor, in concluding that ESC was offered for the Subject Chassis but rejected by SVO. For several different reasons, this Court should reject Plaintiffs' argument and affirm.

## I.    Plaintiffs' Pleaded Invoice Excerpt was Sufficient to Establish the Offer and Rejection Elements of the No-Duty Defense.

This Court need not consider Plaintiffs' argument about inferences because Plaintiffs, themselves, supplied the direct evidence sufficient to satisfy the offer and rejection elements of *Brewer*'s no-duty defense. Specifically, as *Brewer* confirms in no uncertain terms, Plaintiffs' pleaded invoice excerpt was, itself, sufficient.

In *Brewer*, the component-part manufacturer moved for summary judgment based on the no-duty defense and, for support, it presented evidence that the final manufacturer did not choose the optional safety features. 124 N.E.3d at 625. However, the component-part manufacturer also presented evidence that the final manufacturer denied being offered the safety features. *Id.* The Indiana Supreme Court explained the component-part manufacturer could have "refute[d]" the final manufacturer's denial and satisfied the second and third elements if it had presented evidence "such as a ***purchase order or invoice*** identifying specific safety features that were offered and rejected." *Id.* (emphasis added). Because the component-part manufacturer failed to present such a purchase order or invoice,

15

the Indiana Supreme Court held the component-part manufacturer did not refute the final manufacturer's denial and thus was not entitled to summary judgment based on the no-duty defense. *Id.*

In stark contrast, Plaintiffs' operative Complaints here include an invoice excerpt showing the offer and rejection of ESC:

```
456   736-998   NO OBSTACLE DETECTION SYSTEM
457   73H-998   NO CAMERA/VIDEO/IMAGING SYSTEM
458   49B-998   NO VEHICLE STABILITY ADVISOR OR CONTROL
459   73B-998   NO LANE DEPARTURE WARNING SYSTEM
```

*Che* Dkt. 206, ¶ 14. In other words, Plaintiffs' own pleadings include the exact evidence the Indiana Supreme Court identified as sufficient to prove a component-part manufacturer owes no duty in this situation, *i.e.*, "a ***purchase order or invoice*** identifying specific safety features that were offered and rejected." *Brewer*, 124 N.E.3d at 625 (emphasis added). In fact, the Indiana Supreme Court said this type of evidence was not only sufficient to show an offer and rejection, but also sufficient to refute contrary evidence, such as the final manufacturer's denial of an offer. *Id.* Notably, as the District Court pointed out, such a denial does not even exist here—there is no evidence (or even argument) that SVO denied ESC was offered. *Che* Dkt. 218, p. 11.

Via their Motion for Judgment on the Pleadings, DTNA and DTB raised the fact that, under *Brewer*, Plaintiffs' pleaded invoice excerpt was dispositive evidence for the offer and rejection elements. *Che* Dkt. 147, p. 7. After that Motion was denied, DTNA and DTB renewed the same argument in their Motion for Summary Judgment. *Che* Dkt. 189, p. 6-7.

16

In denying judgment on the pleadings, the District Court acknowledged Plaintiffs' pleaded invoice excerpt, but concluded it was insufficient to establish the offer and rejection elements of *Brewer*'s no-duty defense. *Che* Dkt. 154, p. 8-9. The District Court reasoned "that 'offer' and 'reject' are active verbs" that require evidentiary support beyond a purchase order or invoice, such as evidence "that SVO went down a checklist of available options, selecting and rejecting each as it saw fit" or, alternatively, evidence that Mr. Klockow "verbally reviewed all available options with SVO." *Id.* at p. 9. The District Court did not revisit this reasoning at the summary judgment stage, despite DTNA and DTB's renewed reliance on Plaintiffs' pleaded invoice excerpt. *Che* Dkt. 218, p. 1-15.

The District Court's reasoning is contrary to what the Indiana Supreme Court said in *Brewer*. Under the *Erie* doctrine, federal courts are "obliged to follow state decisional law" in diversity-jurisdiction cases, such as this one. *Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002). "Federal courts asked to rule on claims arising under state law must take it as it exists. State courts have the prerogative of innovating on common-law subjects, but federal courts do not." *Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013). That means the District Court "had to look to [Indiana] law for the substantive standard of what evidence would satisfy" the offer and rejection elements of the no-duty defense. *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1398 (7th Cir. 1997); *see also Wackman v. Rubsamen*, 602 F.3d 391, 400 n.2 (5th Cir. 2010) ("Federal courts look to state law … to determine the general *kind* of evidence necessary to establish

17

a particular state law cause of action [or defense].") (emphasis in original); *Dueringer v. Gen. Am. Life Ins. Co.*, 853 F.2d 283, 285 (5th Cir. 1988) ("[W]e must look at Mississippi law to determine the type of evidence that should be considered.") (quotations & ellipsis omitted).

In *Brewer*, the Indiana Supreme Court made clear what type of evidence would satisfy the offer and rejection elements—a "***purchase order or invoice*** identifying specific safety features that were offered and rejected." 124 N.E.3d at 625 (emphasis added). In contrast to the District Court's ruling, *Brewer* does not require "a checklist of available options" filled out by SVO or testimony that the "available options" were "verbally reviewed" with SVO. *Che* Dkt. 154, p. 9. By requiring something beyond Plaintiffs' pleaded invoice excerpt, the District Court required ***more*** proof of offer and rejection than what *Brewer* requires.

That is not allowed. The District Court was bound to take Indiana law "as it exists," and had no "prerogative" to disagree with the Indiana Supreme Court on "what evidence would satisfy" the offer and rejection elements of *Brewer*'s no-duty defense. *See Bridewell*, 730 F.3d at 677; *Medcom*, 106 F.3d at 1398. Further, by requiring more than the purchase order or invoice required by *Brewer*, the District Court made it more difficult for component-part manufacturers to prove the no-duty defense, thereby indirectly—but indisputably—expanding the liability of such defendants under Indiana law. "Federal courts are loathe to fiddle around with state law, and especially circumspect when it comes to expanding liability under state law." *Wells v. Freeman Co.*, 94 F.4th 608, 618 (7th Cir. 2024) (quotations &

18

citation omitted). When faced with two possible interpretations of state law, this Court "takes the approach that is restrictive of liability." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 636 (7th Cir. 2007) (quotations & brackets omitted). The District Court impermissibly took the opposite approach.

This Court, however, is "not cabined by how the district court decided the case." *Grinnell Mut. Reins. Co. v. S.B.C. Flood Waste Sols., Inc.*, 113 F.4th 768, 773 (7th Cir. 2024). Rather, this Court "can affirm the district court's grant of summary judgment on any ground supported by the record." *Hedgepeth v. Britton*, 152 F.4th 789, 794 (7th Cir. 2025).

Accordingly, this Court should affirm the grant of summary judgment in DTNA and DTB's favor based on Plaintiffs' pleaded invoice excerpt, which was sufficient to establish the offer and rejection of ESC, *i.e.*, the second and third elements of the no-duty defense. *See Brewer*, 124 N.E.3d at 625. Alternatively, this Court may affirm judgment in DTNA and DTB's favor on the basis that their Motion for Judgment on the Pleadings—premised on Plaintiffs' pleaded invoice excerpt—should have been granted and the case never should have reached the summary judgment stage in the first place. *See Maria S. as Next Friend for E.H.F. v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019) (affirming judgment in favor of defendants on plaintiff's appeal from grant of summary judgment on the alternative basis that the district court should have granted the defendants' preceding motion to dismiss)*; W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 845 F.3d 384, 391 (8th Cir. 2016) (agreeing that, even if district court's summary judgment

ruling were erroneous, the judgment could be affirmed if the defendant's prior motion to dismiss should have been granted). Either way, the Court's inquiry can end here.

**II.      Plaintiffs' Admission to DTNA and DTB's Fact #59 was Sufficient to Establish the Offer and Rejection Elements of the No-Duty Defense.**

Even if something more than a purchase order or invoice were somehow required for the offer and rejection elements, Plaintiffs—by operation of law— admitted a dispositive fact for these two elements when responding to DTNA and DTB's Statement of Material Facts. Referring to Mr. Klockow's June 29, 2016, proposal for a group of chassis that included the Subject Chassis, DTNA and DTB's summary judgment fact #59 stated: "***The proposal did not include ESC because Mr. Foris did not want it***." *Che* Dkt. 206, ¶ 59 (emphasis added). Citing no evidence, Plaintiffs responded in full: "This fact is disputed." *Id.* Plaintiffs' unsupported response was insufficient to lodge a genuine dispute.

"As the put up or shut moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by ***identifying specific, admissible evidence*** showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted) (emphasis added). Indeed, Federal Rule of Civil Procedure 56(c)(1)(A) provides: "A party asserting that a [summary judgment] fact … is genuinely disputed ***must*** support the assertion by … ***citing to particular parts of materials in the record***, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials." (emphasis added). In violation of this Rule, Plaintiffs did not support their purported dispute of fact #59 by citing to any "particular parts of materials in the record." *Che* Dkt. 206, ¶ 59. The District Court's Local Rule 56-1(b)(2)(C) similarly requires that a "party opposing the motion [for summary judgment] ***must*** … file … a Response to Statement of Material Facts which includes … ***a citation to evidence*** supporting each dispute of fact[.]" (emphasis added). In violation of this Local Rule, Plaintiffs did not support their purported dispute of fact #59 with any "citation to evidence." *Che* Dkt. 206, ¶ 59.

Under both Federal Rule of Civil Procedure 56(c)(1)(A) and the District Court's Local Rule 56-1(b)(2)(C), a nonmoving party "who denies a material fact ***is required to provide the admissible evidence that supports his denial*** in a clear, concise, and obvious fashion, for quick reference of the court." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) (emphasis added). When, as here, the nonmoving party "fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule[s], those facts ***are deemed admitted*** for purposes of the motion." *Id.* at 218 (quotations omitted) (emphasis added). Because Plaintiffs failed to properly support their purported dispute of DTNA and DTB's fact #59, that fact is deemed admitted. *See id.*

Again, fact #59 states: "***The proposal did not include ESC because Mr. Foris did not want it***." *Che* Dkt. 206, ¶ 59 (emphasis added). This admitted fact reflects a knowing, deliberate choice by SVO to not equip the Subject Chassis with

available ESC, and thus satisfies the offer and rejection elements of *Brewer*'s no-duty defense. *See Brewer*, 124 N.E.3d at 624-25 (agreeing with federal district court ruling that a component-part manufacturer "cannot be liable for failing to equip its products with an optional device that was knowingly rejected") (quotations, brackets, & ellipsis omitted) (citing *Anderson v. P.A. Radocy & Sons, Inc.*, 865 F. Supp. 522 (N.D. Ind. 1994)).

As discussed above, this Court "can affirm the district court's grant of summary judgment on any ground supported by the record." *Hedgepeth*, 152 F.4th at 794. Accordingly, this Court should affirm the grant of summary judgment in DTNA and DTB's favor because Plaintiffs admitted dispositive fact #59. The Court's inquiry may also end here.

**III. DTNA and DTB's One-Sided Evidence Was Sufficient to Establish the Offer and Rejection Elements of the No-Duty Defense.**

Even if Plaintiffs' pleaded invoice excerpt and Plaintiffs' admission of fact #59 were somehow insufficient to satisfy the offer and rejection elements of *Brewer*'s no-duty defense, this Court should nevertheless affirm. This is not a case of conflicting evidence or competing inferences. Rather, it is a case of "one-sided" evidence pointing to only one ***reasonable*** conclusion: SVO knowingly rejected available ESC for the Subject Chassis. *See Branham v. Snow*, 392 F.3d 896, 907 (7th Cir. 2004). "[N]o reasonable jury could" agree with Plaintiffs' unevidenced and speculative theory to the contrary. *See id.*

In the District Court, Plaintiffs conceded that Mr. Klockow advised Mr. Foris in 2010 that ESC was available for the Freightliner M2 106 truck chassis (the same

22

type of chassis as the Subject Chassis). *Che* Dkt. 206, ¶ 49. Now, on appeal, Plaintiffs question whether this "alleged discussion" took place in 2010—a fact they have already conceded. *See* Plaintiffs' Brief, p. 30-31. It is too late for Plaintiffs to dispute this conceded fact. "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Domka v. Portage Cty., Wis.*, 523 F.3d 776, 783 (7th Cir. 2008) (quotations omitted). Plaintiffs, therefore, have waived any dispute that Mr. Klockow advised Mr. Foris about the availability of ESC in 2010. There is no genuine dispute that SVO was offered ESC in 2010.

Nor is there any genuine dispute that SVO rejected ESC at that time. Mr. Klockow testified that Mr. Foris decided that with respect to "medium duty" chassis ordered by SVO, such as the Subject Chassis, ESC was not "needed for what those vehicles were going to be." *Che* Dkt. 208-1, p. 111:22-112:21, 132:20-133:3. Plaintiffs question Mr. Klockow's testimony, but they identify no contradictory evidence. *See* Plaintiffs' Brief, p. 32-33. "As the put up or shut moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by *identifying specific, admissible evidence* showing that there is a genuine dispute of material fact for trial." *Grant*, 870 F.3d at 568 (quotations omitted). Plaintiffs have not done so.

SVO's rejection of the offer of ESC in 2010 is important because *Brewer*'s no-duty defense is grounded in the final manufacturer's knowledge of the safety

feature being an available option, *i.e.*, the component-part manufacturer has no duty because the final manufacturer "***knowingly*** reject[s]" the safety feature. *Brewer*, 124 N.E.3d at 624-25 (emphasis added). Once that knowledge is acquired, the law does not require a component-part manufacturer to make repeated offers of a safety feature that the final manufacturer is already aware of and has already rejected. To the contrary, there is no "duty to recommend optional safety features to an owner who already knows about them." *Hutchison v. Fitzgerald Equip. Co.*, 910 F.3d 1016, 1023 (7th Cir. 2018).

Since SVO already knew ESC was available for Freightliner M2 106 chassis beginning in 2010, SVO "was indisputably aware of the availability" of ESC in 2016 when it ordered the Subject Chassis. *See Campos v. Crown Equip. Corp.*, 35 Fed. App'x 31, 33 (2d Cir. 2002) (holding that lessee of forklift "was indisputably aware of the availability of [the subject] safety features" in 1999 based on knowledge it acquired in 1996). Plaintiffs present no evidence or argument that SVO somehow lost knowledge of ESC's availability by the time it ordered the Subject Chassis in 2016. Thus, when SVO ordered the Subject Chassis in 2016 without ESC—which SVO already knew to be available based on knowledge it acquired in 2010—SVO "knowingly rejected" the standing "offer" of ESC for Freightliner M2 106 chassis, including the Subject Chassis. *See Brewer*, 124 N.E.3d at 624-25.

Moreover, additional uncontradicted evidence confirms SVO knowingly rejected available ESC specifically for the Subject Chassis in 2016. The Subject Chassis was ordered in accordance with SVO's standard specification. *Che* Dkt. 206,

¶ 32; *Che* Dkt. 208-1, p. 72:23-73:12. SVO decided which equipment to include in its standard specification. *Che* Dkt. 206, ¶ 21. And SVO decided not to add ESC to its standard specification, notwithstanding that SVO learned ESC was available in 2010. *Id.* at ¶ 23. Mr. Klockow testified that he reviewed SVO's standard specification with Mr. Foris on an annual basis, and that he discussed the availability of ESC and its features with Mr. Foris "probably at least once a year when [they] were reviewing the [standard specification] for any changes that would have happened year over year." *Che* Dkt. 208-1, p. 88:22-89:5; 131:9-19, 136:23-137:12. Mr. Klockow also went over the proposal for the 2016 order that included the Subject Chassis line-by-line, and in-person, with Mr. Foris. *Che* Dkt. 189-14, ¶ 13. That proposal, in accordance with SVO's standard specification, did not include ESC. *Che* Dkt. 189-15, p. 2-16.[12] Mr. Foris signed and initialed the ESC-less proposal that included the Subject Chassis. *Che* Dkt. 206, ¶ 60.

These uncontradicted facts further show that, when SVO ordered the Subject Chassis in 2016, SVO knew ESC was available. Yet, SVO ordered the Subject Chassis in accordance with its standard specification—a specification that SVO did not alter to include ESC, even after learning of its availability in 2010—and did so after review and approval of a proposal that did not include ESC. The only ***reasonable*** inference from SVO's actions is that SVO knowingly rejected the "offer" of ESC for the Subject Chassis. Mr. Klockow even confirmed as much, testifying that he placed the tick mark in the Dealer Handshake next to the phrase "NO VEHICLE STABILITY ADVISOR

---

[12] *See also Yao* Dkt. 189-15.

OR CONTROL" because Mr. Foris declined ESC for the Subject Chassis. *Che* Dkt. 189-14, ¶ 15; *Che* Dkt. 208-1, p. 126:21-127:10.

At bottom, Plaintiffs are not truly making an "inference" argument, as they misleadingly suggest. They identify no evidence whatsoever from which a jury could ***reasonably*** infer the absence of ESC on the Subject Chassis was somehow the result of an unwitting choice by SVO. What Plaintiffs are really arguing is that the jury could simply disbelieve the mountain of evidence showing that SVO knowingly rejected the available ESC for the Subject Chassis. *See* Plaintiffs' Brief, p. 34-35. The mere possibility of juror disbelief—a possibility that exists in ***every*** case no matter the evidence—is insufficient to withstand a motion for summary judgment. A nonmoving party may not avoid summary judgment "and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Corrugated Paper*, 868 F.2d at 914 (quotations omitted). "A claim that a jury might disbelieve an opposing party's version of events, without more, is insufficient to give rise to a genuine factual dispute." *Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc.*, 59 F. Supp. 3d 865, 881 (N.D. Ill. 2014).

"Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel*, 407 F.3d at 859 (quotations omitted). Plaintiffs did not "put up." In response to DTNA and DTB's Motion for Summary Judgment, Plaintiffs were unable to identify any evidence supporting their version of events. That remains true on appeal. Having no

26

evidence, Plaintiffs do nothing more than attempt to sow "some metaphysical doubt as to the material facts." *Siegel*, 612 F.3d at 937. That does not suffice. *Id.* The District Court's judgment should also be affirmed based on the completely one-sided evidence in favor of DTNA and DTB.

## IV.  Plaintiffs Waived Any Challenge to the Judgment in Favor of DTB.

Finally, Plaintiffs do not challenge the additional and independent reason that the District Court granted summary judgment in favor of DTB, namely that Plaintiffs failed to show "DTB was involved in any aspect of the production and sale of the Subject Chassis." *Che* Dkt. 218, p. 14. "When a district court bases its ruling on two grounds and a plaintiff challenges only one on appeal, she waives any claim of error in that ruling." *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 108 F.4th 458, 494 (7th Cir. 2024) (quotations & brackets omitted). This is "because if you lose for two independent reasons" in a district court, "an appellate victory on one does not affect the judgment." *Appvion, Inc. Ret. Savs. & Emp. Stock Ownership Plan by & through Lyon v. Buth*, 99 F.4th 928, 955 (7th Cir. 2024) (quotations omitted). Thus, no matter the resolution of Plaintiffs' appeal regarding DTNA and DTB's no-duty defense, the judgment in favor of DTB must be affirmed. *See id.*

## CONCLUSION

DTNA and DTB respectfully request this Court affirm the District Court's judgment in their favor.

Respectfully submitted,

By: */s/ Michael J. Kleffner*
Michael J. Kleffner
Taylor B. Markway
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mkleffner@shb.com
tmarkway@shb.com

Carolyn E. Riggs
FBT GIBBONS LLP
111 Monument Circle, Suite 4500
P.O. Box 44961
Indianapolis, IN 46244-0961
Telephone: (317) 237-3800
Facsimile: (317) 237-3900
criggs@fbtgibbons.com

Counsel for Consolidated Appellees
Daimler Truck North America LLC and
Daimler Trucks & Buses US Holding LLC

**CERTIFICATE OF COMPLIANCE**

I hereby certify that:

1. This Brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B)(i), in that it contains 6,794 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

2. This Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook font.

*/s/ Michael J. Kleffner*
Counsel for Consolidated Appellees
Daimler Truck North America LLC and
Daimler Trucks & Buses US Holding LLC


**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

*/s/Michael J. Kleffner*
Counsel for Consolidated Appellees
Daimler Truck North America LLC and
Daimler Trucks & Buses US Holding LLC